# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| REYBOLD VENTURE GROUP, XVI, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: N23C-12-049 FJJ |
| | ) | |
| v. | ) | |
| | ) | |
| TESLA INDUSTRIES, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: May 9, 2025
Decided: June 3, 2025

## OPINION AND ORDER
*On Defendant's Motion in Limine as to Plaintiff's Measure of Damages*

*Jeffrey M. Weiner, Esquire*, Jeffrey M. Weiner Law Offices, 1332 N. King Street, Wilmington, Delaware, *Attorney for Plaintiff*

*Joseph J. Bellew, Esquire*, Gordon Rees Scully Mansukhani LLP, 824 N. Market Street, Suite 220, Wilmington, Delaware, *Attorney for Defendant.*

**JONES, J.**

## FACTS AND PROCEDURAL HISTORY

Plaintiff Reybold Venture Group, XVI, LLC ("Reybold") brought the instant action against Defendant Tesla Industries, Inc ("Tesla") seeking damages for future rent and clean-up costs resulting from the parties' landlord-tenant dispute.[1] Reybold and Tesla entered an agreement (the "Lease Agreement") under which Reybold leased Suites 106-108 at 6 Bellecore Drive to Tesla since August 2016. The first lease term was from August 18, 2016 to August 30, 2017 for $7,500 per month with an option to renew for two more one-year terms.[2] On May 15, 2019, Reybold and Tesla agreed to extend the lease term from September 1, 2019 to August 31, 2021 with an option for Tesla to renew for one year through August 3, 2022.[3] The parties agreed on an option for Tesla to renew on June 13, 2022. This renewal was for a five-year term through August 31, 2027 for $10,500 per month plus $2, 250 a month for common area maintenance ("CAM").[4]

On March 14, 2023, Reybold filed a Summary Proceeding for Possession Complaint in Justice of the Peace Court No. 13. The Court awarded Reybold possession and monetary damages of $93,285.52 and CAM and $350 per diem until Tesla vacated.[5] Tesla filed an appeal to this order on July 12, 2023. Reybold

---

[1] *See* Docket Item ("D.I.") 90 Exhibit ("Ex.") A, Complaint.
[2] *Id.* Ex. B, Lease Agreement.
[3] *Id.* Ex. B, First Amendment to Lease Agreement.
[4] *Id.* Ex. C, Second Amendment to Lease Agreement.
[5] *Id.* ¶¶ 6-7.

subsequently filed a Request for Writ of Possession on August 1, 2023. The premises were surrendered on August 11, 2023.[6]

Reybold filed the Complaint in the instant case in Superior Court on December 5, 2023 claiming it was entitled to lost rent at $10,500 per month plus CAM of $2,250 per month beginning on August 11, 2023 based upon Tesla's liability for breaching the lease agreement. The parties submitted a stipulation on February 1, 2024 which included the withdrawal of Tesla's July 12, 2023 appeal from the July 11, 2023 Judgement/Order for Possession. Tesla satisfied its judgment on May 13, 2024, and Reybold was able to re-lease the premises to C&J Tire Services, Inc. ("C&J") on June 4, 2024 for $14,062.50 per month.[7]

The parties agree that Tesla breached the lease agreement and have narrowed the issues for the instant case to determining (1) the amount of post-eviction rent Reybold is entitled to, and (2) the amount of clean-up costs Reybold incurred and can recover.[8]

## PARTIES' CONTENTIONS

The parties dispute over how the future rent damages should be calculated. Tesla argues the correct formula for calculating lost rent is "to take the vacancy period (i.e. September 1, 2023, through August 1, 2024) at Tesla's rental rate (i.e.

---

[6] *Id.* ¶¶ 8-9.
[7] *Id.* ¶¶ 11-14.
[8] D.I. 90 ¶ 2.

$10,500 per month) and offset that by the difference in the increased rent Reybold is receiving from C&J (i.e. $14,062.50 per month) for the 37 months" on the remainder of Tesla's lease. Simply put, Tesla finds that the rent Reybold collects from C&J during the remainder of the five-year period that Tesla's lease would have run should be credited towards and effectively do away with the future rent damages Tesla would owe to Reybold. Tesla claims the time period extends from when C&J began paying rent on August 1, 2024 to what would have been the end of Tesla's five-year term on August 31, 2027. Tesla calculates the credit amount to be $3,562.50 for 37 months which totals to $131,812.50.[9]

Reybold disagrees with Tesla's credit calculation and argues the terms of the Lease Agreement control calculation of future rent damages.[10] Reybold first points out that Tesla had a "virtually absolute" right to assign and/or sublet the premises under the Lease Agreement as long as Reybold consented to the sublet or assignment.[11] Reybold argues under this provision Tesla had the "contractual right to eliminate any claim by Reybold for lost rent during the term by assigning or subletting."[12] Next, Reybold contends Tesla "contractually release[d] any claim to rent in excess of the rent reserved under the Lease." Reybold suggests the following Lease provision supports this argument:

---

[9] D.I. 90 ¶ 19.
[10] D.I. 93 ¶ 3.
[11] *Id.* ¶ 4 Ex. A, Article 16.
[12] *Id.* ¶ 4.

In the event of any such assignment or subletting, Tenant shall remain liable for the performance of Tenant's obligations during the Term hereof, and any rent received by Tenant in excess of the rent reserved under this Lease or any payments made to tenant in consideration of such assignment or subletting shall be paid over to Landlord as additional rent.[13]

Finally, Reybold claims the Lease Agreement provides that in the event of a default Tesla could only obtain credit for the reserved rent paid by a new tenant if Tesla made payments "to the Landlord monthly, on the days when the rent would have been payable under this Lease, the amount due hereunder."[14]   The Lease Agreement provision Reybold is referring to states the following:

[A]ny sums collected by Landlord from new tenant obtained on account of the Tenant shall be credited against the balance of the rent due hereunder as aforesaid.  Tenant shall pay to Landlord monthly, on the days when the rent would have been payable under this Lease, the amount due hereunder less the amount obtained by Landlord from such new Tenant.[15]

Reybold argues because Tesla failed to make these monthly payments it cannot credit C&J's higher monthly rent payments to Tesla's future rent damages.

## RELEVANT LAW

Damages awarded for a breach of contract should be "an amount sufficient to restore the injured party to the position it would have been in had the breach not

---

[13] *Id.* ¶ 4 Ex. A, Article 16.
[14] *Id.* ¶ 4 Ex. A, Article 15B(iv).
[15] *Id.*

occurred."[16]  Under Delaware law, breach of contract damages should "be based on the reasonable expectations of the parties *ex ante*" rather than "mere speculation."[17] This principle of remedies, known as expectation damages, measures "the amount of money that would put the [non-breaching party] in the same position as if the [breaching party] had performed the contract."[18]  Expectation damages compel the breaching party to provide relief to the non-breaching party in the amount the non-breaching party reasonably expects the value of the breached contract to be.[19]  They are assessed by "(1) the loss to the nonbreaching party (2) plus any loss, including incidental or consequential loss, caused by the breach, (3) less any cost or other loss that the non-breaching party avoided by not having to perform."[20]  The Delaware Supreme Court holds that breach of contract damages "should not act as a windfall" by putting the non-breaching party in a *better* position than it would have been in had the breach never occurred.[21]

"The parties to a contract may, of course, contract around virtually all common law rules.  But in the absence of a written provision to the contrary, the

---

[16] *Ivize of Milkwaukee, LLC v. Compex Litigation Support, LLC*, 2009 WL 1111179, at *10 (Del. Ch. Apr. 27, 2009) (quoting *Frontier Oil Corp. v. Holly Corp.*, 2005 WL 1039027, at *39 (Del. Ch. Apr. 29, 2005)).

[17] *Id.*

[18] *Duncan v. Theratx, Inc.*, 775 A.2d 1019, 1022 (Del. 2001).

[19] *Id.*

[20] *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 293 (3d Cir. 2014) (citing Restatement (Second) of Contracts § 347).

[21] *Henkel Corp. v. Innovative Brands Holding, LLC*, 2013 WL 396245, at *5 (Del. Ch. Jan. 31, 2013) (quoting *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 146 (Del. 2009)).

common law rules 'form an implied part of every contract.'"[22] "[W]here the parties agree to the procedure to follow if there is late payment of rent, then the lease provisions govern."[23] In determining whether a contractual provision governs over a common law principle, the Court evaluates the unambiguous language "not as subjectively understood by either party but as understood by a hypothetical reasonable third party."[24]

## ANALYSIS

The Court must consider what value Reybold reasonably expected to receive at the time the parties entered the Lease Agreement.[25] It is clear that at the time the parties entered the Lease Agreement, and its Second Amendment which directed the renewal, Reybold reasonably expected to receive Tesla's monthly rent and CAM expenses for the entire five-year lease term.

Delaware case law holds in the event of repudiation the nonbreaching lessor can recover the "difference between the rent stipulated and the fair rental value for the balance of the term" of the lease agreement.[26] The logic behind this holding is that it is difficult for the Courts to say whether a subject premise will be re-let, even if the non-breaching lessor has put in a good faith effort in finding a new tenant yet

---

[22] *Bay Point Capital Partners L.P. v. Fitness Recovery Holdings, LLC*, 2021 WL 5578705, at *4 (Del. Super. Nov. 30, 2021).

[23] *Martin v. Hopkins*, 2006 WL 1915555, at *7 (Del. Super. June 27, 2006).

[24] *Id.* (quoting *U.S. West, Inc. v. Time Warner, Inc.*, 1996 WL 307445, at *7 (Del. Ch. June 6, 1996)).

[25] *See Ivize of Milwaukee, LLC*, 2009 WL 1111179, at *10.

[26] *Chavin v. H.H. Rosin & Co.*, 246 A.2d 921, 923 (Del. 1968); *Curran v. Smith-Zollinger Co.*, 157 A. 432, 433 (Del. Ch. 1931).

fails to do so.[27]  However, if the lessor finds a new tenant, then the calculation of damages is the difference between the rent stipulated in the breached lease and the rent in the lease with the new tenant.[28]  Thus, in the instant case, the Court calculates future rent damages as the difference between the rent stipulated in Reybold and Tesla's breached Lease Agreement and the new rent amount in Reybold and C&J's lease.[29]

Reybold maintains that the Lease Agreement governs the measure of future rent damages.[30]  Reybold relies upon a portion of the Lease Agreement's default provision stating  a "Tenant shall pay to Landlord monthly, on the days when the rent would have been payable under this Lease, the amount due thereunder" to support its argument that the Lease Agreement governs the notion that Tesla cannot obtain credit for the rent paid by C&J under the new lease because Tesla has not been making monthly payments to Reybold.[31]  A facial reading of the provision in its entirety does not incline the Court to agree with this interpretation.  Read in congruence with the preceding statement, the language appears to establish a

[27] *Curran*, 157 A. at 433.
[28] *Id.* at 432 ("Where the lessor…has relet the premises for the balance of the term at a lower rent, the damages provable…are measured by the difference between the rent stipulated in the abandoned lease during the balance of the term and the rent specified in the new one as payable over the corresponding period.")
[29] *See WaveDivision Holdings, LLC v. Millenium Digital Media Systems, L.L.C.*, 2010 WL 3706624, at *20 (Del. Ch. Sept. 17, 2020) (holding nonbreaching party entitled to recover the value it expected from the parties' Agreement minus profit it gained from mitigation); *Henkel Corp.*, 2013 WL 396245, at *6 (crediting income to damages owed by breaching party because nonbreaching party did not reasonably expect to receive that income if there had not been a breach.)
[30] D.I. 93 ¶5.
[31] *Id.*

schedule in which Tesla would make monthly defaulted rent payments on the same day of the month the Lease Agreement provides, as if it had not been breached. This litigation is active and partially for the purpose of calculating future rent damages owed. Therefore, it does not make logical sense that Tesla would have been or currently be making monthly rent payments to Reybold. In addition, Reybold's suggested measure of damages would allow Reybold to recover more than its expectation damages, leaving it in a better position than it would have been in without Tesla's breach.

In support of its argument, Reybold cites to *Martin v. Hopkins* which held that the lease at issue governed the parties' procedure for providing a deficiency notice for missed rent payments.[32] The lease contained an explicit provision setting out the proper steps, whereas, in the instant case, the lease does not contain such a provision regarding Tesla's inability to offset its damages. In fact, it contains provisions that say it may.[33] The Court finds, under the clear and unambiguous terms of the Lease Agreement, that the parties did not contract around the common law principle of expectation damages, nor did they create an agreed upon measure of future rent damages in the Lease Agreement that governs this damages analysis.

---

[32] *Martin*, 2006 WL 1915555, at *7.

[33] *See* D.I. 93 ¶ 4 Ex. A, Article 15B(iv) ("…any sums collected by Landlord from any new tenant obtained on account of the Tenant shall be credited against the balance of the rent due hereunder as aforesaid. Tenant shall pay to Landlord monthly, on the days when the rent would have been payable under this Lease, the amount due hereunder less the amount obtained by Landlord from such new Tenant.")

Reybold's argument that Tesla missed its opportunity to avoid a future rent claim from Reybold because Tesla failed to utilize its contractual right to assign and/or sublet the premises does not sway the Court's finding. Tesla's decision to not invoke this contractual right has no impact on the calculation of future rent damages. Additionally, the Lease Agreement provision Reybold relies upon to argue Tesla "contractually release[d] any claim" to offset its damages with C&J's increased rent is in relation to subletting and/or assigning the premises, which is not relevant in this case.

## CONCLUSION

For the above reasons, the Court finds the proper measure of future damages is to offset the amount owed during the vacancy period with the increased rent Reybold obtained from re-letting the premises to C&J. Because C&J's monthly rent and CAM expenses are higher than the amount specified under the Lease Agreement, Reybold will not recover these damages from Tesla. However, the door is still open for Reybold to argue relief for its clean-up costs.

**IT IS SO ORDERED.**

*/s/ Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge

cc: *File&ServeXpress*
Jeffrey M. Weiner, Esq.
Joseph J. Bellew, Esq.